-PS-

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**JUAN CANDELARIA, 89-T-5069,**

              **Plaintiff,**

     **-v-**                                                                               **00-CV-0912E(Sc)**

**R. BAKER, SERGEANT PERRY, LANE E. ECK,**
**NEW YORK STATE DEPARTMENT OF**
**CORRECTIONAL SERVICES, C. PINKER,**
**RN NANCY O'CONNOR, ARNOT OGDEN**
**MEDICAL CENTER, FLOYD G. BENNETT, JR.,**
**KATHY CRIPPEN and TIMOTHY DOTY,**

              **Defendants.**

---

## REPORT, RECOMMENDATION AND ORDER

## INTRODUCTION

Presently before the Court is plaintiff's motion for a preliminary injunction. (Docket No. 43).[1] This matter has been referred to the undersigned, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), for, among other things, hearing and disposition of all non-dispositive motions and a report and recommendation on any motion for injunctive relief. (Docket No. 31).

---

[1] Also before the Court at this time is plaintiff's motion for leave to file a Fourth Amended Complaint (Docket No. 64 and 66), which, in a Decision and Order to be issued contemporaneously with this Report and Recommendation, will be denied.

## **BACKGROUND**

Plaintiff, *pro se*, and presently an inmate of the Wende Correctional Facility, commenced this action back on October 24, 2000 by the filing of a Complaint and motion to proceed *in forma pauperis*. (Docket Nos. 1 and 2). On April 23, 2001, with permission, plaintiff filed both a Second Amended Complaint (Docket No. 10) and a Third Amended Complaint (Docket No. 11).[2] On August 15, 2001, the Court (Hon. William M. Skretny): (1) transferred the Second Amended Complaint to the United States District Court for the Southern District of New York; (2) dismissed claims denominated or listed as Claims E-H in the Third Amended Complaint; (3) allowed claims denominated or listed as Claims A-D of the Third Amended Complaint to proceed under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b); and (4) directed service against defendants R. Baker, J. Perry, Lane E. Eck, New York State Department of Correctional Services, C. Pinker, Nancy O'Connor, RN, Arnot Ogden Medical Center, Floyd G. Bennett, Kathy Crippen and Timothy Doty. (Docket No. 12).

Although quite convoluted and difficult to comprehend, *albeit* legible, the gist of the Third Amended Complaint, which survived the Court's review pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), is that plaintiff was denied proper medical treatment with respect to his End-Stage Renal Disease and was retaliated against for the filing of grievances and lawsuits. Claims A-D of the Third Amended Complaint

---

[2]The document described herein as the "Third Amended Complaint" (Docket No. 11) was titled by plaintiff as a "Second Amended Complaint" but is referred to and treated herein as the Third Amended Complaint because plaintiff filed two Second Amended Complaints, Docket Nos. 10 and 11.

involve conduct that occurred while plaintiff was incarcerated at the Elmira Correctional Facility[3] and received dialysis treatment at Arnot Ogden Medical Center ("Arnot"), and appear to raise the following claims of violations of 42 U.S.C. § 1983, the Americans With Disabilities Act, 42 U.S.C. § 12101 *et seq.* and the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.,* against the remaining defendants:

1. Defendants Eck, Baker and Perry, Correctional Officers at Elmira, retaliated against plaintiff for his grievances and filing of lawsuits when they allegedly changed his dialysis schedule to a less favorable one and filed false misbehavior reports against him (Docket No. 5, Decision and Order, pp. 13-14; Docket No. 12, Decision and Order, p.4, ¶ 1);

2. Defendant O'Connor, a Nurse Administrator at Elmira, allegedly denied plaintiff medical treatment and allowed other defendants access to plaintiff's medical files; (Docket No. 5, Decision and Order, pp. 13-14; Docket No. 12, Decision and Order, p.4, ¶ 1);

3. Defendant Pinker, a Correctional Officer at Elmira, wrote a false misbehavior report against plaintiff in retaliation for the exercise of plaintiff's religious beliefs (Docket No. 5, Decision and Order, pp. 13-14; Docket No. 12, Decision and Order, p.4, ¶ 1);

4. Defendant Bennett, Superintendent of Elmira, was put on notice by plaintiff of the problems he was having with staff at Elmira and, as a result of said complaints, plaintiff was retaliated against (Docket No. 5, Decision and Order, p. 3;

---

[3] Plaintiff was transferred to Elmira on or about December 2, 1997. He was later transferred to Wende on or about August 28, 2001. As discussed below, plaintiff's proposed Fourth Amended Complaint, for the most part, includes the claims presently raised in the Third Amended Complaint and adds seven new defendants and several new claims that have arisen during his incarceration at Wende.

Docket No. 12, Decision and Order, pp.13-14, 17);

     5.  Defendant New York State Department of Correctional Services ("DOCS") and Arnot, of which defendants Doty and Crippen are employees, violated plaintiff's rights under the ADA and Rehabilitation Act, in relation to plaintiff's dialysis treatment for his kidney disease ( Docket No. 5, Decision and Order, p. 13-15; Docket No. 12, Decision and Order, pp.16-17; Third Amended Complaint, ¶ 8).

     On April 11, 2003, plaintiff filed a motion to file another amended complaint, which was later denied by the Court on April 20, 2004 without prejudice to re-filing with an updated proposed amended complaint.  (Docket No. 58).  On August 5, 2004, plaintiff filed both a motion to amend the Third Amended Complaint and an "Updated Proposed [Fourth] Amended Complaint."  (Docket Nos. 64 and 66).  In a Decision and Order to be filed contemporaneously with this Report and Recommendation, the Court will deny said motion.  *See* n. 1, *supra*.

     On November 5, 2003, prior to the filing of the motions to amend the Third Amended Complaint, plaintiff filed the instant motion for a preliminary injunction.  (Docket No. 43).  For the following reason, it is the recommendation of the undersigned that plaintiff's motion for a preliminary injunction be denied.

## DISCUSSION

Plaintiff's motion for a preliminary injunction requests, *inter alia*, that (1) defendants provide copies of their entire legal file pertaining to this action to him; (2) defendants either transferhim back to Elmira and release him to the general population there or integrate him with other similarly situated inmates at Wende on the ground floor in general population so that he can attend and participate in programs and activities;[4] (3) defendants cease from indefinitely keeping plaintiff isolated or otherwise administratively segregated in the Wende Infirmary without medical justification; and (4) defendants be prevented from receiving federal funding pursuant to the End-Stage Renal Disease Program Amendment Act of 1978 until such time as they put plaintiff back on the active kidney transplant waiting list. (Docket No. 43).

Shortly after plaintiff filed the motion for a preliminary injunction, the Court ordered that defendants provide him with copies of the complaints, answers and discovery material in this matter and that plaintiff file a memorandum of law clarifying his claims and the remedies being sought in this matter. (Docket No. 51). On February 27, 2004, plaintiff filed a memorandum of law, which, among other things, appears to winnow his request for a preliminary injunction to (1) requiring defendants to transfer him back to general population at Elmira or, alternatively, integrate plaintiff in the general population at Wende so that programs and activities are available to him; and (2) requiring defendants to replace plaintiff on the active kidney transplant waiting list.

---

[4] Plaintiff is a wheel chair bound paraplegic.

(Docket No. 52, Plaintiff's Memorandum of Law, pp. 3-4).

Plaintiff submits that he is entitled to a preliminary injunction based on defendants' violations of his First Amendment rights (retaliation) and that the injunction is sought against DOCS under the ADA and Rehabilitation Act, as alleged in the complaints and amended complaints in this matter, because claims under the ADA must be asserted against the entity itself.  (*Id.*, p. 4).  Although plaintiff's memorandum of law is lengthy, cumbersome and, at times, confusing, it is clear to the Court that plaintiff's request for injunctive relief is based on his claim that he was transferred to Wende and removed from the active kidney transplant list in retaliation for the filing of this lawsuit and his numerous other complaints and challenges to DOCS' policies and rules and regulations.  (*Id.*, pp 19-23).

Defendants oppose the motion on the ground that the claims set forth in the motion--*i.e.*, retaliatory transfer and removal from the transplant list--are simply not a part of this matter inasmuch as the claims set forth in the Third Amended Complaint arise from events or occurrences which occurred at Elmira prior to the time plaintiff was transferred to Wende.  Defendants also submit that plaintiff cannot establish the elements necessary for granting a preliminary injunction.

Initially, the Court notes that defendants are correct that plaintiff's request for injunctive relief is not related to the claims set forth in the Third Amended Complaint and that the individual DOCS defendants named in the Third Amended Complaint are

employed at Elmira and not Wende. Plaintiff has moved to amend the Third Amended Complaint to allege, *inter alia*, a retaliatory transfer, but, in a Decision and Order issued contemporaneously with this Report and Recommendation, the Court will deny said relief. The motion for injunctive relief therefore is not properly before the Court in the instant action because it is separate and apart from the claims asserted in this action. *See Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir.1994) ( "[A] party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint."). *Hakeem v. Stinson*, 1999 U.S. Dist. LEXIS 23195 (Magistrate's Recommendation, N.D.N.Y., August 12, 1999), *adopted by* 2001 U.S. Dist. LEXIS 24549 (N.D.N.Y., March 29, 2001), *aff'd in part, appeal dismissed in part*, 39 Fed.Appx. 674, 2002 U.S. App. LEXIS 13846 (2d Cir. July 8, 2002) ("Because this action is brought against corrections officers at Great Meadow, and not Wende, and the parties named in the motion for injunctive relief are not parties to this lawsuit, the Court is without jurisdiction to grant such relief. Simply put, except in limited circumstances, not relevant herein, a Court may not order injunctive relief as to non-parties to an action.") (Citations omitted)).

While the claims of retaliation at Elmira alleged in the Third Amended Complaint are similar to the retaliatory transfer and removal from the kidney transplant list raised in this motion, they are not the same and the latter claims are simply not part of the Third Amended Complaint in the instant action. Moreover, as defendants point out, while DOCS is a named defendant in this action it is, and only can be, alleged to have violated plaintiff's rights under the ADA and the Rehabilitation Act. DOCS simply

cannot be subject to liability in the form of either monetary or injunctive relief for plaintiff's claims of retaliation under 42 U.S.C. § 1983. *E.g., Komlosi v. New York State Office of Mental Retardation and Developmental Disabilities*, 64 F.3d 810, 815 (2d Cir.1995); *cf. Ford v. Reynolds,* 316 F.3d 351, 354-55 (2d Cir.2003) *(Ex Parte Young,* 209 U.S. 123(1908), created "a limited exception to the general principle of sovereign immunity[, which] allows a suit for injunctive relief challenging the constitutionality of a state official's actions in enforcing state law under the theory that such a suit is not one against the State, and therefore not barred by the Eleventh Amendment.").

The Court therefore recommends that plaintiff's motion for preliminary injunctive relief be denied without prejudice inasmuch as it is based on claims that are not set forth in the Third Amended Complaint. The Court notes, that to the extent plaintiff's Amended Complaint in the recently filed action (*Candelaria v. Higley, et al.*, 04-CV-0277E) appears to set forth claims of a retaliatory transfer to Wende and retaliatory removal from the kidney transport list, he may seek similar injunctive relief in that action.

Alternatively, if the District Judge were not to adopt or confirm this recommendation,[5] the Court finds that plaintiff's request for preliminary injunctive relief should be denied because he has not shown a "clear" or "substantial" likelihood of success on the merits.

---

[5] Moreover, if the District Judge, upon objections, does not adopt or confirm the Decision and Order denying plaintiff's motion for leave to file the proposed Fourth Amended Complaint, the claims set forth in the motion for a preliminary injunction would be a part of this action inasmuch as the claims of retaliatory transfer and retaliatory removal from the transplant list are raised in the proposed Fourth Amended Complaint.

**Preliminary Injunction Standard**

In general, a district court may grant a preliminary injunction where the moving party establishes: (i) that it is likely to suffer irreparable injury if the injunction is not granted, and (ii) either (a) a likelihood of success on the merits of its claim, or (b) the existence of serious questions going to the merits of its claim and a balance of the hardships tipping decidedly in its favor. *See Bery v. City of New York*, 97 F.3d 689, 693-694 (2d Cir. 1996), *cert. denied*, 520 U.S. 1251 (1997). However, when "'the moving party seeks to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme,' the injunction should be granted only if the moving party meets the more rigorous likelihood-of-success standard." *Id.* at 694 (quoting *Plaza Health Lab., Inc. v. Perales*, 878 F.2d 577, 580 (2d Cir. 1989)). Finally, when the injunction sought "'will alter, rather than maintain the status quo,'" or will "'provide the movant with ... relief [that] cannot be undone even if the defendant prevails at a trial on the merits,'" the moving party must show a "clear" or "substantial" likelihood of success. *Jolly v. Coughlin*, 76 F.3d 468, 473 (2d Cir. 1996) (quoting *Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995)).

Clearly, the relief sought in plaintiff's motion will alter the status quo and therefore the more stringent standard of a "clear" or "substantial" likelihood of success applies. In any event, plaintiff's motion would also fail under the "likelihood of success"

or "serious questions going to the merits"standard.[6]

Again, while plaintiff's Third Amended Complaint is difficult to comprehend, it appears that the thrust of said pleading is that plaintiff was retaliated against for filing grievances and lawsuits against DOCS and its agents or employees in violation of his First Amendment rights and that he has been denied adequate medical treatment in relation to his kidney disease. The motion is based on a claim that plaintiff was transferred to Wende and removed from the active kidney transplant list upon said transfer in retaliation for the instant lawsuit and other protected conduct.

An inmate asserting First Amendment retaliation claims must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against him, and (3) that there was a causal connection between the protected speech and the adverse action." *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir.2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). The Second Circuit, acknowledging that retaliation claims are "prone to abuse", *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983), approaches such claims "with skepticism and particular care," because "virtually any adverse action taken against a prisoner by a prison official--even those otherwise not rising to the level of a constitutional violation--can be characterized as a constitutionally proscribed retaliatory act." *Dawes*, 239 F.3d at 491.

Defendants have submitted the Declarations of Helen Dean, Deputy

---

[6]For purposes of this motion, the Court assumes, without deciding, that plaintiff has shown irreparable harm by the removal of his name from the kidney transplant list.

Superintendent for Program Services at Wende (Docket No. 54), and Rajiv Ranjan, M.D., a physician and Director of Dialysis for Wende under contract to provide services for DOCS (Docket No. 55), in opposition to the motion to show that plaintiff's transfer and removal from the kidney transplant list were not retaliatory and were done for legitimate, non-retaliatory reasons. *See Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).

Deputy Superintendent Dean states that according to DOCS' records, the decision to transfer plaintiff was made by DOCS' Central Office Health for medical reasons. Plaintiff was transferred to Wende in order to take advantage of the new dialysis unit that was being opened at Wende and he was one of a number of inmates throughout DOCS transferred to Wende due to the opening of a dialysis unit there. Plaintiff's transfer occurred a number of months prior to the opening of the unit. (Dean Dec., ¶¶ 4-5, and Exh. A). Dean also states that since the transfer, plaintiff has been housed in the Infirmary because he is confined to a wheelchair and that accommodations have been made to allow him access to services at Wende, including law library services and access to the internal grievance program. (*Id.*, ¶¶ 6-8, and Exhs. B-C). Dean further states that plaintiff is not receiving the same privileges as inmates in general population but that is due to the fact that he has been subjected to internal prison discipline and that even though the plaintiff is housed in the Infirmary, he is subject to the same restrictions as all inmates in SHU.

Dr. Ranjan notes that according to plaintiff's records, plaintiff has received

scheduled dialysis treatment at Wende in 2003 and 2004, and in fact only missed two dialysis treatments at Wende. However, those treatments were provided at Erie County Medical Center while plaintiff was there for a procedure. (Ranjan Dec., ¶¶ 4-6, and Exhs. A-B). With respect to the claim that plaintiff was removed from the active kidney transplant list, Dr. Ranjan states that prior to being transferred to Wende, plaintiff was on a "Cadaveric Kidney Transplant List" at Strong Memorial Hospital and that after the opening of the Dialysis Unit at Wende DOCS decided to transfer inmates to the ECMC transplant list. Plaintiff, however, was not immediately transferred to the ECMC list because initially he would not sign an authorization to release his medical records (*id.*, ¶¶7-8 and Exh. C). Eventually, he did sign the authorization, but not until September 4, 2003.

Plaintiff was determined, after a psychiatric assessment in January 2004, to be a high risk candidate for transplant because of a risk of non-compliance with post-operative procedures, including an immunosuppressive regimen. Plaintiff's evaluation was discussed at a Transplant Committee Meeting at ECMC on February 12, 2004 and he was placed on a 6-month probationary period. If plaintiff established compliance within that period, he would then undergo a necessary updated evaluation and be reactivated on the ECMC transplant list. (Ranjan Dec., ¶¶ 9-10). Moreover, a transfer from the Strong Memorial Hospital to ECMC did not significantly harm plaintiff because the Organ Transplant Procurement Program, a nationwide program, is administered by the United Network for Organ Sharing and the Network has a provision for transfer of waiting periods from one Transplant Center to another, so no waiting period time is lost

upon transfer. (*Id.*, ¶¶ 10-11).

Plaintiff submits that he was approached by agents of DOCS about signing an authorization to have him transferred from the Strong Memorial Hospital waiting list to ECMC's and advised that if he did not sign the authorization DOCS, would advise Strong Memorial Hospital to remove plaintiff from the waiting list in retaliation for his refusal to authorize the transfer of his kidney transplant program. (Docket No. 79, Plaintiff's Supplemental Affidavit, ¶8). Plaintiff also states that he declined to authorize the transfer because he was at the top of the Strong Memorial Hospital transplant list and that if he was transferred to ECMC's list he would need to be reevaluated and would not be given credit for the four years spent waiting on Strong Memorial Hospital's list. (Id., ¶ 9).

Based upon the foregoing, it is clear to the Court that plaintiff has not established, as is his burden, that he has a substantial likelihood of success on his claims that his transfer and removal from the active kidney transplant list was for the purpose of retaliating against him. Plaintiff's retaliation claims are, at this time, supported by little more than conclusory statements. Plaintiff's removal from the list was not as a result of DOCS's retaliatory action, but rather, was based on a medical determination by the ECMC transplant team that plaintiff was non-compliant and was a high risk candidate for transplant. While the Court empathizes with plaintiff's kidney disease and his presumed need for a transplant, the plaintiff has failed to establish that he is likely to prevail on his claim that he was transferred to Wende and removed from

the transplant list because of the instant lawsuit and his other grievances and complaints. Defendants have come forward with evidence to show that the transfer of plaintiff to Wende, plaintiff's placement in the Infirmary and the transfer or lack thereof to ECMS's transplant list were all based upon legitimate, non-retaliatory reasons unrelated to his numerous grievances, complaints, lawsuits and the like or his medical disabilities.

Accordingly, it hereby RECOMMENDED that plaintiff's motion for a preliminary injunction be denied.

## **CONCLUSION**

Based upon the foregoing, it is RECOMMENDED that plaintiff's motion for a preliminary injunction (Docket No. 43) be DENIED without prejudice because it is based on claims that are not set forth in the Third Amended Complaint and, in the alternative, should the District Judge not agree with and confirm this recommendation, the motion for a preliminary injunction should nevertheless be DENIED without prejudice.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that this Report, Recommendation and Order be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of the Court within ten (10) days of service of this Report, Recommendation and Order in accordance with the above statute, Rules 72(a)-(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.2 and 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

The Clerk is hereby directed to send a copy of this Report, Recommendation and Order to the Plaintiff, *pro se*, and attorneys for the Defendants.

IT IS SO ORDERED.

                                                                <u>S/ H. Kenneth Schroeder, Jr.</u>
                                                                 **H. KENNETH SCHROEDER, JR.**
                                                                 **United States Magistrate Judge**

DATED:     April 12, 2005
               Buffalo, New York